Hay, Judge,
delivered the opinion of the court:
This is a suit brought by the North German Lloyd against the United States.
*139 The defendant has demurred to the petition of the plaintiff.
The plaintiff in its petition sets out two causes of action. To maintain its first cause of action the petition alleges that it is a corporation which was organized under the laws of New Jersey, November 20, 1900; that it is a German corporation, and obtained the New Jersey charter for greater convenience in carrying on its business in the United States; that on March 28, 1918, the North German Lloyd Dock Co. was owner in fee simple of a tract of land in the State of New Jersey fully described in its petition, and of improvements erected on said land; that a full description of said improvements is fully set out in the petition, as well as a description of certain rights, privileges, and easements in other lands adjoining or adjacent to the land above mentioned; that by a written lease, dated March 20, 1903, the said North German Lloyd Dock Co. leased the said property rights and easements in other lands to the plaintiff for a term of 999 years from the date of said lease; that the land, improvements, rights, and easements in other lands herein mentioned constitute the property described in an act of Congress approved March 28, 1918, as “ the docks, piers, warehouses, wharves, and terminal equipment and facilities on the Hudson Eiver now owned by the North German Lloyd Dock Co.”
The petition further alleges that the plaintiff was in exclusive possession of all this property on April 6, 1917, when the United States entered upon the said property without excluding the plaintiff from possession, and on April 20, 1917, the United States took exclusive possession of said property and of the leasehold estate of the plaintiff therein, and has ever since excluded the plaintiff therefrom.
The petition further alleges that the President of the United States, by a proclamation dated June 28,1918, determined and declared that the acquisition of said property mentioned in the act of Congress of March 28, 1918, owned by the North German Lloyd Dock Co. was necessary for the national security and defense and that he took for the United States the immediate possession and title thereof, including all leasehold estates and interests therein, and that *140 the plaintiff was thereby divested of its leasehold and term of years and the same became the property of the United States. The act of Congress of March 28, 1918 (being a section of the urgent deficiency act of said date, 40 Stat. 459,) reads as follows:
“ The President is authorized to acquire the title to the docks, piers, warehouses, wharves, and terminal equipment and facilities on the Hudson River now owned by the North German Lloyd Dock Company and the Hamburg-American Line Terminal and Navigation Company, two corporations of the State of New Jersey, if he shall deem it necessary for the national security and defense: Provided, That if such property can not be procured by purchase, then the President is authorized and empowered to take over for the United States the immediate possession and title thereof. If any such property shall be taken over as aforesaid, the United States shall make just compensation therefor to be determined by the President. Upon the taking over of said property by the President as aforesaid, the title to all such property so taken over shall immediately vest in the United States: Provided further, That section three hundred and fifty-five of the Revised Statutes of the United States shall not apply to any expenditures herein or hereafter authorized in connection with the property acquired.”
The proclamation of the President contained the following provision: “ Just compensation for the property hereby taken over will be hereafter determined and paid.”
The petition alleges that plaintiff has never been paid any compensation for said property, and further alleges that the value thereof at the time it was taken was the sum of $7,560,606.20, for which amount it sues with interest from June 28, 1918, less certain offsets set out in its petition.
It is contended by the plaintiff that the allegations of its petition bring its case within the scope of section 145, Judicial Code. That section confers upon this court the power to hear and determine claims founded upon the Constitution or any law of Congress, or upon any contract, express or implied, with the Government of the United States.
The fifth amendment to the Constitution provides: “ Nor ■ shall private property be taken for public use, without just compensation.” An examination of this amendment must cause one to conclude that its provisions apply to citizens *141 of the United States, and not to alien enemies in time of war. If it were otherwise the war powers conferred upon Congress by the Constitution would be rendered nugatory and the Government would be placed in the attitude of being obliged to pay to its alien enemies money which could be used for its own destruction. It therefore follows that the plaintiff can not claim a right under the Constitution in this court to be reimbursed for property seized as enemy property by the Government in time of war.
The plaintiff, however, claims that it is entitled t<5; recover in this court by virtue of the act of Congress of March 28, 1918, and the proclamation of the President of June 28, 1918. It was the action taken by virtue of this act which deprived the plaintiff of its property, and the question is whether the circumstances gave rise to the implication of a contract of which this court has jurisdiction. Acts passed by Congress which authorize the taking of the property of alien enemies in time of war are constitutional and are not in conflict with the fifth amendment to the Constitution. So that in" exercising the war powers conferred upon it by the Constitution Congress in passing the act of March 28, 1918, legitimately exercised these powers, and if any injury was done to the plaintiff the injury is only incidental to the exercise of these powers and there has been no taking of its property for the public use, and this court has no jurisdiction. It is true that the act itself provides as follows:
“ If any such property shall be taken as aforesaid, the United States shall make just compensation therefor to be determined by the President.”
Upon this provision of the act the plaintiff relies to establish a contract, either express or implied, which it claims confers jurisdiction upon this court to determine the value of the property taken and to render judgment for the value thereof so determined. Congress in the exercise of the war powers conferred upon it by the Constitution has authority to deal with the property of alien enemies in such manner as may to it seem proper.
Its powers are ample; and if in dealing with such property it sees fit to provide for just compensation it can do so, and in doing so it can provide how the compensation shall be *142 determined, and is not restricted from so doing, as the act was passed under the war power and is not in conflict with the fifth amendment. Miller v. United, States, 11 Wall. 268, 304; Morrisdale Coal Co. case, 55 C. Cls. 310, 315; Deutseh-Australische, etc., v. United States, 59 C. Cls. 450, 455. As Congress did not provide any other form for the determination of the compensation except that it should be determined by the President, and as the property in question is the property of an alien enemy taken in time of war under the provisions of a statute passed for that purpose, it follows that under circumstances such as these no implication arises of a contract of which this court can take jurisdiction and the demurrer of the United States to the first cause of action set out in the petition of the plaintiff must be sustained.
As a second cause of action, and alternatively to the first cause of action, the plaintiff repeats paragraphs 1 to 12, inclusive, of its first cause of action, and further alleges that on December 3, 1918, the President of the United States determined and declared the amount of the just compensation to be paid for the property taken as aforesaid by the defendant to be $4,831,705, from which there was to be deducted $47,500 interest paid by the United States on a mortgage on the property, which was paramount to plaintiff’s leasehold, leaving a net sum of $4,784,205, which was the award made by the President as the just compensation for the plaintiff’s interest in the property taken.
The petition further alleges that the President ordered that the amount of said compensation should be paid to the Alien Property Custodian to be held by him subject to the provisions of the trading with the enemy act, approved October 6, 1917, 'which provides in the last paragraph of section 12:
“After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury shall be settled as Congress shall direct.”
The petition alleges that the order of the President that the amount of the just compensation determined to be due the plaintiff should be held by the Alien Property Custodian *143 subject to the provisions of the trading with the enemy act is contrary to the provisions of the act of March 28, 1918, and that the said order is without warrant of law and null and void; and the plaintiff asks judgment for $4,831,705, with interest from June 28, 1918, less any credits to which the defendant may be entitled.
If the President exceeded his authority in turning over to the Alien Property Custodian the money of the plaintiff there is no jurisdiction in this court whereby the wrong done to the plaintiff, if any wrong there be, can be remedied.
However, the money so turned over to the Alien Property Custodian was the money of an alien enemy and as such it was properly given into the custody of the Alien Property Custodian, who was the proper person to receive it. Sections 9 and 17 of the trading with the enemy act (40 Stat. 411, 419, 425) give to the district courts of the United States jurisdiction of suits brought under this act. The money to which the plaintiff lays claim is in the custody of the Alien Property Custodian, and whether rightfully or wrongfully so this court has no jurisdiction in a case which comes, as this does, under the provisions of the trading with the enemy act. The court therefore sustains the demurrer of the defendant to the second cause of action set out in the plaintiff’s petition.
The court sustains the demurrer of the defendant to the petition of the plaintiff, and the petition is therefore dismissed.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.